IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

David Hamilton,                                           Civil File No. 3:07-cv-0404

      Plaintiff,

v.                                                        **DEFENDANT UNITEDHEALTH GROUP'S
                                                          MOTION FOR SUMMARY JUDGMENT**

Voxeo Corporation, et al.,

      Defendants.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant UnitedHealth Group ("UHG") hereby moves this Court for an order granting summary judgment against Plaintiff David Hamilton on all claims against UHG. UHG bases this Motion upon Defendant UnitedHealth Group's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment and in Support of Cross-Motion for Summary Judgment, the supporting affidavits, all of the files, records, and proceeding therein, such evidence and arguments as may be presented to the Court prior to the decision on this motion, and the arguments of counsel.

Dated: April 23, 2009               Respectfully submitted,


/s/James L. Butler
Christine M. Haaker (#0063225)
James L. Butler, Jr. (#0079488)
THOMPSON HINE LLP
2000 Courthouse Plaza N.E.
P.O. Box 8801
Dayton, OH 45401-8801
Telephone: (937) 443-6822
Facsimile: (937) 443-6830
E-mail: Christine.Haaker@Thompsonhine.com




***Attorneys for Defendant***
***UnitedHealth Group Incorporated***

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

David Hamilton,

    Plaintiff,

v.

Voxeo Corporation, et al.,

    Defendants.

Civil File No. 3:07-cv-0404

**DEFENDANT UNITEDHEALTH GROUP INCORPORATED'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiff David Hamilton ("Plaintiff") lacks any legal or factual basis for his claims against Defendant UnitedHealth Group Incorporated ("UHG"). Decisions issued by the Sixth Circuit Court of Appeals and courts in the Southern District of Ohio within the last few months severely constrain the types of private actions available under the Telephone Consumer Protection Act ("TCPA"), and the facts uncovered in Plaintiff's and his wife's depositions belie Plaintiff's factual allegations. For several reasons, the Court should deny Plaintiff's motion for partial summary judgment and grant UHG's cross-motion for summary judgment on all claims.

First, the Court should dismiss all claims against UHG because the undisputed facts demonstrate neither it nor its subsidiaries made any calls in violation of the TCPA. UHG did not "solicit" or "advertise" to Plaintiff, as is required for a TCPA claim, and whatever calls it or its subsidiaries made were permissible because of an ongoing

business relationship with Plaintiff's wife. Accordingly, Plaintiff cannot sustain a claim against UHG for making calls in violation of the statute, nor can he sustain any related claim for UHG's failure to provide him with a copy of its "do not call" policy.

Second, even if Plaintiff can maintain a claim based on UHG's telephone calls, the TCPA provides no private right of action based on UHG's refusal to give Plaintiff its "do not call" policy. The requirement that a company maintain such a policy available on demand is a procedural regulation enforceable by state and federal regulators, not private plaintiffs. Thus, this claim fails independently.

## FACTUAL BACKGROUND

In this case, Plaintiff has sued a number of entities, including UHG and Silverlink Communications, Inc. ("Silverlink"). Silverlink is a third-party vendor; United Healthcare Services, Inc., a subsidiary of UHG, contracted with Silverlink to deliver a message to members of the SecureHorizons health plan (a plan managed by UnitedHealthcare, Inc. ("UnitedHealth")).[1] *See* Affidavit of Florence Newcum ("Newcum Aff.") (attached as "Exhibit A") at ¶ 4 & Ex. A-1 (copy of script used in the calls at issue). In September 2007, Silverlink (on behalf of UnitedHealth) made several automated telephone calls to a residential telephone line shared by Plaintiff and his wife. *Id.* at ¶ 6; Compl. [Docket No. 3] ¶ 7; Declaration of James L. Butler, Jr. ("Butler Decl.") (attached as "Exhibit B"), Ex. B-1 (Deposition of Lynn M. Hamilton ("L. Hamilton

---

[1] UnitedHealth is a subsidiary of United Healthcare Services, Inc. Because the actions at issue were the provenance of its subsidiary companies, and there is no evidence the calls were ever attributed to it, UHG maintains it is not a proper party to this action. *See* Answer of Defendant UnitedHealth Group Incorporated [Docket No. 13] at ¶ 25. It responds to this motion without waiving its defense.

2

Dep.")) at 22. Silverlink made these calls to provide Plaintiff's wife, Lynne Hamilton, with information about her health care plan, SecureHorizons. *See* Newcum Aff., Ex. A-1; L. Hamilton Dep. at 7-10. Although Plaintiff testified neither he nor his wife had a business relationship with UnitedHealth in September 2007, his testimony has been conclusively discredited; according to Mrs. Hamilton, UnitedHealth (through SecureHorizons) provided her health care plan when the calls were made to their residence, a fact Plaintiff knew. Butler Decl., Ex. B-2 (Deposition of David Hamilton ("D. Hamilton Dep.")) at 42-44; L. Hamilton Dep. at 11.

Silverlink's records show it called Plaintiff's residence to provide the following scripted message:

> We have some important news about your health plan.
>
> Recently you received a letter from your SecureHorizons® health plan announcing that your health plan now carries the AARP name. This is exciting news as this is the only Medicare Advantage Plan with the AARP name on it.
>
> We know that some of our members are not part of AARP. You do not need to become a member of AARP to continue to be enrolled in the plan. Your health plan will continue to be administered by SecureHorizons® by UnitedHealthcare. [[Custom2]][2]
>
> As the nations leading membership organization for people 50 and over, AARP has long championed positive social change to enrich the lives of people as they age. [[Custom1]] health plans is proud to be associated with AARP. Both organizations are committed to improving senior health.

---

[2] This information, as well as the "Custom 1" reference in the next paragraph, was customized for the particular plan participant. *See* Newcum Aff., Ex. A.

> We also want to remind you that your plan will change to
> AARP® MedicareComplete® effective January 1st 2008.
> Look for the new logo on upcoming materials. Please
> continue to use your existing member identification card until
> a new card is sent to you.
>
> If you have any questions or concerns about this change
> please call Member Services right away. The number is
> located on the back of your ID Card.
>
> Thank you for being part of SecureHorizons® health plans.
> We look forward to continuing to serve you as a member of
> the AARP® MedicareComplete® plan – the only Medicare
> Advantage plan with the AARP name on it.
>
> To hear this message again please say Repeat after the chime.
> Otherwise to acknowledge receipt of this message and end
> this call, please say "okay" after the chime.

Newcum Aff., Ex. A-1. Although Plaintiff does not believe this was the message stated in the calls he received, he admitted he only listened fully to one of the five alleged calls,[3] and he could not identify crucial details of that call – including whether it invited him to enroll in or subscribe to a program. D. Hamilton Dep. at 30, 65-68.

The undisputed testimony of Mrs. Hamilton confirms that the calls to her residence were in fact directed to her with information about her health care plan. L. Hamilton Dep. at 11, 31-32, 36. Just as stated in the script, Mrs. Hamilton received a new insurance card in or around January 2008 containing the AARP logo, which was not

---

[3] The records of Silverlink and Voxeo, the telephony carrier who acted as the conduit through which the telephone calls were made to Plaintiff's residence, demonstrate only two calls were made to the residence. Newcum Aff. at ¶6; Affidavit of Ryan Campbell (attached as "Exhibit C") at ¶ 6. Nonetheless, and solely for purposes of this motion, UHG assumes as true Plaintiff's allegation that five calls were made to his residence in September 2007. Compl. ¶ 7. The number of calls does not matter for this motion.

displayed on her prior cards. *Id.* Further, Ms. Hamilton stated she would welcome communications providing information relating to changes in her health care plan – including information explaining the relationship between UnitedHealth and AARP – by mail ***or telephone***. *Id.* at 14-15, 32-33.

## ARGUMENT

### I. THE SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. On a motion for summary judgment, the movant has the burden of showing that there is no genuine issue of material fact, and the Court must interpret the evidence and draw all reasonable inferences in favor of the nonmovant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). Nonetheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (emphasis in original).

### II. THE COURT SHOULD GRANT SUMMARY JUDGMENT AGAINST PLAINTIFF BECAUSE NEITHER UHG NOR ANY OF ITS SUBSIDIARIES MADE ANY CALLS TO PLAINTIFF'S RESIDENCE IN VIOLATION OF THE TCPA.

Plaintiff seeks summary judgment solely on his claim that UHG violated the TCPA by refusing to provide him with a copy of its "do not call" policy. However,

recent Sixth Circuit law indicates no such independent claim exists. The intent of the TCPA provisions creating private rights of action is to prevent improper calls – not to provide plaintiffs with an arsenal of claims for violations of procedural and technical rules. The only basis for a claim under the TCPA is an improper call (or fax), and Plaintiff cannot sustain any of his claims against UHG or its subsidiaries because no UHG entity made such calls. Specifically, it did not solicit or advertise anything to Plaintiff, and even if it did it was permitted to do so because it had an established business relationship with Mrs. Hamilton. Thus, the Court should deny Plaintiff's motion and grant summary judgment against Plaintiff on all of his claims.

### A. The TCPA and its regulations only permit claims on a "per call" basis.

The TCPA and its implementing regulations permit a plaintiff to recover damages for certain types of telemarketing calls. 47 U.S.C. § 227; 47 C.F.R. § 643.1200; *see also Charvat v. GVN Michigan, Inc.*, No. 08-3282, 2009 WL 937246, at **6-7 (S.D. Ohio April 9, 2009) (attached as "Exhibit D"). The regulations prohibit an entity from "initiat[ing] any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior consent of the person called, unless the call… is made for a commercial purpose but does not include or introduce an unsolicited advertisement or constitute a telephone solicitation[.]" 47 C.F.R. § 64.1200(a)(2).[4] The

---

[4] A telephone solicitation is a telephone call or message "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(12). An unsolicited advertisement is "any material advertising the commercial availability or quality of any property, goods, or services[.]" 47 C.F.R.
§ 64.1200(f)(13).

regulations further require that a telemarketer institute certain procedures, including: "(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do not call list." 47 C.F.R. § 64.1200(d).

In *Charvat*, decided after Plaintiff filed this action, the Sixth Circuit addressed a plaintiff who, like Plaintiff here, sought damages under the TCPA for 186 alleged violations of the TCPA, even though the defendant only made ten calls. 2009 WL 937246 at *1-2. The Court of Appeals affirmed the lower court's ruling that § 227(c) of the TCPA "does not allow for the award of statutory damages for each violation during a call, but instead limits statutory damages to one award per call." *Id.* at **6-7.[5] The Court went on to affirm the dismissal of most of plaintiff's claims, including his claim based on defendant's failure to implement proper procedures. *Id.* at *7. It held that a violation of the TCPA's procedural requirements, including the requirement to maintain a "do not call" policy, is not independently actionable, explaining:

> The relevant regulation confirms our analysis. Section 64.1200(d) states, "*No person* or entity *shall initiate any call for telemarketing purposes* to a residential telephone subscriber *unless such person* or entity *has instituted procedures* for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). It then lists the *"minimum standards" for these procedures, including **maintenance** of a written do-not-call policy*, training of personnel, and recording of do-not-call requests. *Id.* The "violation of the regulations" is therefore the initiation of the phone call without having

---

5 Although Plaintiff brings this suit under § 227(b), which governs prerecorded calls, while *Charvat* decided a case brought under § 227(c), which governs live calls, the "private right of action" language is the same in both sections. *Compare* 47 U.S.C. § 227(b)(3) *with* § 227(c)(5). Accordingly, *Charvat* suggests a plaintiff may only bring a claim under § 227(b) for an improper call, not for any statutory violation.

> implemented the minimum procedures. Because, read in context, the statute and regulations focus on the telephone call itself, we conclude that the district court did not err in holding that Charvat cannot collect statutory damages on a per-violation basis under the TCPA.

*Id.* (emphasis added).

### B. Because UHG (or its subsidiaries) did not solicit or advertise to Plaintiff, the TCPA is not applicable and the Court should grant UHG's motion for summary judgment.

Plaintiff seeks judgment only on his claim that UHG failed to provide him with a copy of its "do not call" policy, not on his claim that UHG made improper telephone solicitations or advertisements. However, Plaintiff cannot sustain any claim against UHG or its subsidiaries unless they solicited or advertised to him, which they did not do. For this reason, the Court should grant judgment against Plaintiff on all claims.

As the Court is aware, Plaintiff is not entitled to summary judgment unless he proffers evidence to support each and every element of his claim. Plaintiff cannot meet this burden and, in fact, the undisputed facts direct summary judgment against him. A review of the script of the calls at issue reveals it is neither a "telephone solicitation" nor an "unsolicited advertisement," a requirement for the TCPA to even apply to the calls. 47 C.F.R. § 64.1200(a)(2). Instead, the script, by its plain language, was merely providing information to an established SecureHorizons member – such as Mrs. Hamilton – about a change in the name of her health plan. Newcum Aff., Ex. A-1. No where in the script was there an encouragement to purchase or invest in property goods or services, 47 C.F.R. § 64.1200(f)(12), or an advertisement about the "commercial availability or quality of any property, goods, or services," 47 C.F.R. § 64.1200(f)(13). Indeed, Plaintiff

8

himself could not identify any portion of the script that constitutes a telephone solicitation or an unsolicited advertisement. *See* D. Hamilton Dep. at 64-72. Moreover, as Silverlink has testified – and such testimony is undisputed – it did not affect or modify the content of the script in any way once approval for the script had been granted by United HealthCare Services, Inc. and the Centers for Medicare and Medicaid Services. Newcum Aff. at ¶ 5. Thus, a crucial element of Plaintiff's claim is absent.

Despite Plaintiff's denial that the script comports with his recollection of the telephone calls, his testimony does not change the outcome of the present motion. Silverlink has stated, unequivocally, that the calls they made to Plaintiff's residence followed the script, and it did not modify the script. *Id.* at ¶ 4-5. Moreover, far from providing testimony as to the alleged content of the calls he claims to have received, during his deposition Plaintiff admitted he only listened fully to one of the five alleged calls and could not even recall specific facts about that call, such as whether it urged him to purchase any product or service. *See* D. Hamilton Dep. at 64-72. Accordingly, the Court should grant UHG's motion for summary judgment and dismiss Plaintiff's entire Complaint.

        **C.**     **In the alternative, UHG or its subsidiaries was permitted to call Plaintiff's residential telephone line because it had an established business relationship with Plaintiff's wife.**

The TCPA regulations explicitly permit a company to make automated telemarketing calls "to any person with whom the [company] has an established business relationship at the time the call is made." 47 C.F.R. § 64.1200(a)(2)(iv). An "established business relationship" is "a prior or existing relationship formed by a voluntary two-way

9

communication between a person or entity and a residential subscriber[.] 47 C.F.R. § 64.1200(e)(4).

Plaintiff's wife, Mrs. Hamilton, who shares Plaintiff's telephone line, had and continues to have an established business relationship with UnitedHealth because she is a SecureHorizons subscriber. Not only has Plaintiff's wife never asked to be placed on the "do not call" list, she testified she would welcome communications – including telephone calls – providing her with information about her health plan. L. Hamilton Dep. at 14-15, 32-33. This entitled UnitedHealth to call her telephone line with automated messages regarding its products or services.

Although Plaintiff may argue he asked UHG to put him on the "do not call" list, even if true his request would not terminate the relationship between **Mrs. Hamilton** and UHG or its subsidiaries. Mrs. Hamilton testified her husband does not correspond with UHG on her behalf, *see* L. Hamilton Dep. at 21, and the regulations provide an established business relationship can only be terminated "by either party" to the relationship – not by a spouse. *See* 47 C.F.R. § 64.1200(f)(4). Thus, for this separate reason, Plaintiff cannot sustain his action against UHG and the Court should enter judgment against him.

### D. At the very least, Plaintiff cannot sustain his motion for summary judgment.

Even assuming *arguendo* that the Court finds there is a fact issue regarding the content of the calls made to Plaintiff's residence or the established business relationship between UHG (or its subsidiaries) and Mrs. Hamilton, at the very least Plaintiff's own

deposition testimony shows there is a factual dispute as to whether UHG or its subsidiaries "solicited" or "advertised" to him. *See supra.* As a result, the Court should deny Plaintiff's motion for this reason alone.

In addition, it is important to note that, in moving for summary judgment, Plaintiff has failed to submit any admissible evidence to support his motion. Plaintiff's motion appears to be premised on the fact that calls in violation of the TCPA were made to his residence at some point and, therefore, UHG's refusal to provide him its do-not-call policy constitutes a separate violation of the TCPA. Far from supporting his motion, though, the speculation and unsupported allegations he recites in his affidavit have no relevance to this case. Plaintiff's claims in this case are based on calls allegedly made in September 2007. *See generally* Compl. [Docket No. 3]. Plaintiff's affidavit, however, discusses calls made in April 2007. *See* Affidavit of David Hamilton ("Hamilton Aff.") at ¶¶ 1-3. These calls formed the basis for a previous lawsuit Plaintiff filed against UHG (*David Hamilton v. UnitedHealth Group*, 07CVE03893 (Dayton Municipal Court)), which the parties settled with no admission of liability.[6] *See* Compl. ¶ 6; *see also* Butler Decl. at ¶ 6. Other than the calls made in April 2007, Plaintiff's affidavit does not identify any particular call supporting his allegations in this action, and he certainly cannot turn unproven allegations – from either this action or a previous one – into a viable summary judgment claim. *See also* Answer [Docket No. 13] at ¶ 7 (admitting

---

[6] The terms of the settlement of this lawsuit were confidential. Butler Decl. at ¶ 6. Upon request, UHG will submit the agreement to the Court for *in camera* review.

Plaintiff named UHG as a defendant in previous action, stating that action was resolved before trial, and denying all other allegations relating to that action).

Moreover, Plaintiff's testimony regarding the calls made in April 2007 is not admissible. His assertion that he was advised by an Edge Teleservices, Inc. ("Edge") employee that Edge telemarketed to Plaintiff on behalf of UHG in April 2007 is hearsay, and Plaintiff lacks foundation for his statement that "the calls were made under the supervision of Cindy Donohoe, Chief Marketing Officer, UnitedHealth Group." *See* Hamilton Aff at ¶¶ 2-3. Similarly, Plaintiff cannot rely on a series of unsigned letters – for which he lays no foundation – to support any of his claims. *See* Hamilton Aff., Exs. A-C.

In the final analysis, while it is clear Plaintiff is not entitled to summary judgment, the evidence further demonstrates that UHG is entitled to judgment against Plaintiff on all of his claims. Plaintiff's vague, self-serving testimony regarding the contents of the calls is not sufficient to let his case continue, especially considering Mrs. Hamilton's testimony, which conclusively contradicts Plaintiff's testimony and corroborates UHG's position that Silverlink called Plaintiff's residence to provide her information about her health plan. *See Evans v. Jay Instrument & Specialty Co.*, 889 F. Supp. 302, 310 (S.D. Ohio 1995) ("[T]he Supreme Court and the Sixth Circuit have made clear [that] self-serving and conclusory allegations are insufficient to withstand a motion for summary judgment.") *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (party opposing summary judgment may not rest upon mere allegations or denial of pleading, but must set forth *specific* facts showing a genuine issue for trial) (emphasis added) and

*Bryant v. Kentucky*, 490 F.2d 1273 (6th Cir. 1974) (conclusory allegations, without more, are not enough to survive summary judgment); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmovant must "do more than simply show there is some metaphysical doubt as to the material facts"); *Anderson v. Liberty Lobby*, 477 U.S. at 249-50 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted); *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986) ("There mere possibility of a factual dispute is not enough.").

### III. THE COURT SHOULD GRANT SUMMARY JUDGMENT AGAINST PLAINTIFF WITH RESPECT TO HIS CLAIM BASED ON UHG'S FAILURE TO PROVIDE ITS "DO NOT CALL" POLICY BECAUSE NO SUCH CLAIM EXISTS.

Even were the Court to accept, for purposes of summary judgment, that UHG or its subsidiaries somehow solicited or advertised to Plaintiff (it did not), and that Plaintiff somehow had authority to terminate his wife's established business relationship (he did not), it still should grant summary judgment against Plaintiff on his claim for UHG's failure to provide him its "do not call" policy because the TCPA does not create any such private right of action.

"In contrast to section 227(b)(3), the TCPA does not provide a private right of action for violations of the technical and procedural standards imposed by section 227(d)." *Boydston v. Asset Acceptance LLC*, 496 F. Supp. 2d 1101, 1110 (N.D. Cal. 2007) (finding no private right of action for regulations promulgated under § 277(d)). "The TCPA entitles individual citizens to relief for the receipt of unsolicited telephone or

13

fax advertisements, but not for procedural or technical deficiencies in those lawfully received." *Id.* "'Allowing separate recovery for each and every technical violation alleged would create a windfall for plaintiffs clearly not in the contemplation of Congress.'" *Id.* (*quoting Klein v. Vision Lab Telecomms., Inc.*, 399 F. Supp. 2d 528, 539-540 (S.D.N.Y. 2005)) ("This Court cannot understand how language governing technical fax requirements in § 227(d), a section that contains no language permitting a private right of action, suddenly bestows a private right of action when it is redrafted into an F.C.C. regulation that fails explicitly to identify the subsection under whose authority it was promulgated.").

Like the *Boydston* court, the Southern District of Ohio recently ruled that "certain regulatory violations [of 64.1200] fall outside the scope of private enforcement actions." *Burdge v. Ass'n Health Care Mgmt.*, No. 1:08-cv-508, 2009 WL 414595 at *3 (S.D. Ohio Feb. 18, 2009) (attached as Exhibit E"). In *Burdge*, the plaintiff allegedly received ten automated telemarketing calls, but brought 55 claims for TCPA violations related to those calls. *Id.* at *1.[7] The defendant moved to dismiss the claims based on regulations set forth in 47 C.F.R. § 64.1200(b) and (d) (relating to technical and procedural standards) because they were promulgated under 47 U.S.C. § 227(d), which carries no private right of action. *Id.* at **2-3. Although the court found "difficulty in navigating which requirements [of 47 CFR 64.1200] are enforceable privately[,]" it dismissed twenty of the 55 TCPA claims, which were based on requirements under § 64.1200 that a

---

[7] The plaintiff alleged that after five of the ten calls, a live operator came on the line.

caller identify itself and provide its phone number."[8] *Id.* at *3-4. The court concluded that the enforcement of those procedural requirements "is within the province [] of state attorneys general and the Federal Communications Commission." *Id.* at *3; *see also Charvat*, 2009 WL 937246 at **6-7 (decided after *Burdge*, confirming the only basis for liability under TCPA is an improper call, not merely a regulatory violation).

A plain reading of the TCPA and its regulations further confirms there is no private right of action for a violation of technical and procedural requirements. Nothing in the laws suggests Congress intended to permit a private party to sue a company for denying him a copy of its "do not call" policy, and although the regulations require telemarketing companies to make such policies "available upon demand," they do not specify that those policies must be made available to private citizens, as opposed to state or federal regulators. *See* 47 U.S.C. § 227(d); 47 C.F.R. § 64.1200(d). In addition, a comparison of the statutory and regulatory frameworks suggests there is no private action for violations of the technical and procedural requirements. The TCPA's substantive anti-telemarketing rules – which, under the statute, are privately actionable – are set forth in §§ 227(b) and (c), and merged in § 64.1200(a)-(c) of the regulation. However, the statute's technical and procedural requirements – which are not actionable – are set forth

---

[8] Because the dismissal of the twenty TCPA claims made it impossible for the remaining claims to reach the $75,000 threshold for diversity jurisdiction, the court did not decide whether a private of action existed for the remaining 35 TCPA claims. However, in dicta, the court stated that, "out of abundance of caution," it would consider the various violations of the 47 CFR 64.12000 as actionable, with the exception of the identification requirements stated in § 277(d), because it could not state "to a legal certainty" which of the remaining provisions of 64.1200 fell under § 227(d). *Id.* at *4.

15

in § 227(d), similar to the technical and procedural requirements (including the "do not call" policy requirements) set forth in § 64.1200(d) of the regulations.  Stated simply, § (d) of the regulations mirrors § (d) of the statute, and because the latter does not permit a private right of action neither should the former.

Finally, sound policy considerations caution against permitting plaintiffs to bring claims based solely on a company's refusal to give out its "do not call" policy.  As *Boydston* notes, permitting a plaintiff to sue a company merely for refusing to provide its "do not call" policy would promote extortionary "windfall" litigation.  For example, it would permit a plaintiff multiple recovery for a single "call" if that call violated more than one TCPA technical requirement (indeed, the plaintiff in *Charvat* alleged 186 "violations" in 10 calls).  It also would encourage litigious plaintiffs to mass-mail requests for corporate "do not call" policies, and then sue each company that failed to provide its policy – even if that company never called the plaintiff.  In addition, these policies typically are internal documents that companies may wish to protect from routine public disclosure for business reasons.  *See, e.g.*, Hamilton Aff., Ex. D (stating UHG's position that "as a matter of protocol the plan does not release internal policies and procedures").  For example, a company might fear that complete public disclosure of its policy could make it susceptible to mass (or recurrent) frivolous litigation.

Based on the language of the TCPA and its regulations, on cases like *Boydston*, *Burdge* and *Charvat*, and on compelling business and judicial interests, the Court should hold that Plaintiff cannot bring a claim against UHG for refusing to provide him with its "do not call" policy.  UHG respectfully requests that it grant UHG's motion for summary

judgment as to this claim and leave enforcement of the technical and procedural requirements of the TCPA to state attorneys general and the Federal Communications Commission.

## CONCLUSION

For the foregoing reasons, UHG respectfully requests that the Court deny Plaintiff's Motion for Partial Summary Judgment and grant UHG's Motion for Summary Judgment.

Dated: April 23, 2009	Respectfully submitted,

/s/ James L. Butler Jr.
Christine M. Haaker (#0063225)
James L. Butler, Jr. (#0079488)
THOMPSON HINE LLP
2000 Courthouse Plaza N.E.
P.O. Box 8801
Dayton, OH 45401-8801
Telephone: (937) 443-6822
Facsimile: (937) 443-6830
E-mail:
Christine.Haaker@Thompsonhine.com
***Attorneys for Defendant***
***UnitedHealth Group Incorporated***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served on the parties listed below on April 23, 2009 via electronic filing in accordance with the ECF receipt and via regular U.S. mail, first-class postage prepaid:

David Hamilton
1394 East Siebenthaler Avenue
Dayton, OH 45414
(via U.S. Mail)

Caroline H. Gentry
PORTER WRIGHT MORRIS & ARTHUR LLP
One South Main Street, Suite 1600
Dayton, Ohio 45402-2028
cgentry@porterwright.com
(via ECF)
*Attorneys for Defendant,*
*Silverlink Communications, Inc.*

Robin D. Ryan
GRAYDON, HEAD & RITCHEY LLP
7759 University Drive
Suite A
West Chester, OH 45069
rryan@graydon.com
(via ECF)
*Attorneys for Defendant,*
*Voxeo Corporation, Inc.*

/s/James L. Butler Jr.
James L. Butler Jr.